IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRIAN DEBLASIO,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**JOHN R. BALDWIN,**<br>**STEVEN DUNCAN, JOHN COE,**<br>**WEXFORD HEALTH SOURCES, INC.,**<br>**LORIE CUNNINGHAM, and**<br>**NICHOLAS LAMB,**<br><br>    **Defendants.** | Case No. 3:17-CV-773-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Report and Recommendation of Magistrate Judge Gilbert C. Sison (Doc. 147), in which he recommends the undersigned grant the motions for summary judgment filed by Defendants Dr. John Coe and Wexford Health Sources, Inc. ("Wexford Defendants") (Doc. 93) and Defendants John Baldwin, Steven Duncan, Lorie Cunningham, and Nicholas Lamb ("IDOC Defendants") (Doc. 112). Plaintiff Brian DeBlasio timely filed an objection to the Report and Recommendation (Doc. 150). For the reasons set forth below, the Court adopts Judge Sison's recommendations and grants Defendants' motions.

### BACKGROUND

Plaintiff Brian DeBlasio filed this lawsuit under 42 U.S.C. § 1983 alleging Defendants violated his constitutional rights as an inmate in the Illinois Department of Corrections (IDOC) housed at Lawrence Correctional Center (Doc. 1). Specifically,

DeBlasio claims Defendants were deliberately indifferent to his serious medical needs concerning his "chronic back and abdominal pain, chronic constipation, fractured vertebra and elevated blood pressure," in violation of the Eighth Amendment (*Id.*).

DeBlasio's claims stem from medical treatment he sought beginning in 2015. In September 2015, DeBlasio saw a physician's assistant, Travis James, who noted that DeBlasio had right testicle pain, flank pain, and a small amount of blood in his urine (*Id.* at p. 9). James also noted tenderness on the right flank area (*Id.*). James suspected either epididymitis, which is inflammation of part of the testicle, or a kidney stone (*Id.*). On September 17, 2015, James saw DeBlasio for a follow-up exam and noted DeBlasio reported significant right flank pain and sharp pain in the inguinal area (*Id.* at p. 11). James ordered an x-ray of DeBlasio's abdomen and the pain medication Toradol (*Id.*).

On September 21, 2015, James reviewed the results of the x-ray with DeBlasio and charted "noticed issue w/vertebrae." (*Id.* at p. 16). DeBlasio testified that James looked at the x-ray for kidney stones, but did not see any. When James looked higher on the x-ray, DeBlasio testified, James told him to sit down and asked if he had been injured because there was a problem with his vertebrae (Doc. 113-2 at p. 9). DeBlasio could not recall any injuries to his back (*Id.*). James ordered Motrin 800 mg, a back support, a low bunk and low gallery permit, and a follow-up in two weeks (*Id.*; Doc. 119-1 at p. 56). DeBlasio alleges "on information and belief" that he may have a fracture in his back due to James's reaction to his x-ray (Doc. 113-2 at pp. 8-9). James is not an x-ray technician, however, and he did not diagnose DeBlasio with a fracture in his vertebrae (Doc. 113-2 at pp. 8-9; Doc. 113-3).

On October 5, 2015, Dr. John Coe, the Medical Director at Lawrence, examined DeBlasio for his complaints of testicular and abdominal pain (Doc. 94-8 at p. 2). His blood pressure at this visit was 140/90 (Doc. 94-4 at p. 18). Dr. Coe examined DeBlasio's back and hips, noting that upon movement his right hip had some limitations and pain (Doc. 94-8 at p. 2). He also examined DeBlasio's testicles and noted that his prostate was tender and swollen. Dr. Coe diagnosed DeBlasio with epididymitis, or inflammation of part of the testicle, which can cause pain in the lower abdomen/pelvic region, pain and tenderness in the testicles, and issues with urination (*Id.*). Because it can be caused by an infection, Dr. Coe ordered 15 days of the antibiotic Cipro in addition to Tylenol and Bisacodyl, a laxative (*Id.*). He also ordered an x-ray of DeBlasio's right hip and lumbar spine, as well as a follow-up appointment after the x-ray (*Id.*).

On October 14, 2015, Dr. Coe saw DeBlasio to follow up on the lumbar x-ray (*Id.*). The x-ray showed only mild degenerative disease (*Id.*; Doc. 94-4 at p. 19). Dr. Coe noted that DeBlasio moved well and was able to get up and down from the table without difficulty (*Id.*). Dr. Coe also performed neurological testing, which revealed no deficits (*Id.*). Dr. Coe further noted that DeBlasio was not wearing his back support (*Id.*). Because mild degeneration is not uncommon and does not require medical intervention, and based on the normal findings from the examination, Dr. Coe found that additional treatment was not required for DeBlasio's low back and hip complaints (*Id.*).

Dr. Coe also examined DeBlasio's testicles and found that the epididymis was no longer swollen (*Id.* at p. 3). He did note, however, a tender, three-millimeter knot on DeBlasio's testicles, as well as tenderness near an old appendectomy scar (*Id.*). Dr. Coe

ordered that DeBlasio remain on the same medication and be scheduled for a follow-up appointment (*Id.*).

On October 23, 2015, DeBlasio went to nurse sick call with complaints of abdominal, back, and testicular pain (Doc. 94-4 at pp. 20-22). His blood pressure was 168/98 (*Id.*). Dr. Coe was contacted and ordered that DeBlasio receive Toradol, a pain and anti-inflammatory medication (*Id.*).

Dr. Coe examined DeBlasio on October 26, 2015, noting that bowel sounds were present but not very active and that his abdomen was tender near his gallbladder (Doc. 94-8 at p. 3). DeBlasio's blood pressure on this date was 133/100 (Doc. 94-4 at p. 22). Dr. Coe suspected possible gallstones and requested a gallbladder ultrasound through the Collegial Review process (Doc. 94-8 at p. 3). Collegial Review is a Wexford process by which a case is presented to other physicians to determine what an appropriate treatment plan is for the patient, including whether imagining, specialty evaluation, or testing should be performed (*Id.*). The gallbladder ultrasound was approved and performed on October 28, 2015 (*Id.*). The results were normal (*Id.*).

Dr. Coe next saw DeBlasio on November 12, 2015 (*Id.* at p. 4). In addition to discussing the normal ultrasound results, Dr. Coe examined DeBlasio and noted a weakened area near his old appendectomy scar, as well as a weakened internal right inguinal ring that was tender and bulged when DeBlasio coughed (*Id.*). Dr. Coe attested that he thought DeBlasio may have early signs of a hernia. He also considered whether DeBlasio may have internal scar tissue from his previous appendectomy that could be causing abdominal discomfort (*Id.*). Because either condition can cause discomfort with

constipation, Dr. Coe ordered Fiberlax, Colace (a stool softener), and Milk of Magnesia (a laxative and antacid) (*Id.*). He also ordered a urinalysis test (*Id.*). DeBlasio's blood pressure was 146/90 at this visit (Doc. 94-4 at p. 28).

The urinalysis came back positive for blood, so Dr. Coe ordered another urinalysis that could be sent away for additional testing (*Id.*). Dr. Coe saw DeBlasio on November 20, 2015, and again noted pain and tenderness near the inguinal area and appendectomy scar (*Id.* at p. 32). His blood pressure was 155/101 (*Id.*). Dr. Coe submitted his case to Collegial Review to determine an appropriate treatment plan, and on November 24, 2015, DeBlasio was approved to see an outside urologist (*Id.* at p. 36).

Before he could see the urologist, on November 30, 2015, DeBlasio reported to the Healthcare Unit with dizziness, lightheadedness, and a small amount of blood in his spit (*Id.* at p. 5; Doc. 113-3 at p. 41). DeBlasio was sent to Lawrence County Memorial Hospital for evaluation, but a chest and abdomen x-ray came back unremarkable (*Id.*). DeBlasio received an IV infusion of Vasotec, a medication that can be used to lower blood pressure (Doc. 113-2 at p. 19).[1] Dr. Andrew West at Lawrence Hospital diagnosed DeBlasio with Irritable Bowel Syndrome (IBS), history of blood in vomit, and right inguinal pain, but he ruled out a right inguinal hernia (Doc. 113-3 at p. 40; Doc. 119-1 at p. 39). Dr. West wrote a prescription for Alosetron, which can be used to treat IBS,[2] and Librium, an anti-anxiety medication (Doc 1-1 at p. 7; Doc. 94-8 at p. 10). Dr. Coe attested that IBS is not a serious medical condition and can be controlled with an appropriate diet, exercise, stress

---

[1] "Vasotec," https://www.drugs.com/vasotec.html (last visited Jan. 9, 2020).
[2] "Alosetron," https://www.drugs.com/cdi/alosetron.html (last visited Jan. 9, 2020).

management, sleep, and medication (Doc. 94-8 at p. 5).

DeBlasio testified that on December 1, 2015, the day after his ER visit, he asked Dr. Coe about getting blood pressure medication, but his blood pressure was normal at that time (Doc. 113-2 at pp. 21-22). DeBlasio further testified that he asked Dr. Coe about his blood pressure numerous times after his ER visit, but he could not provide any specific dates (Doc. 113-2 at p. 22).

DeBlasio was seen by the urologist, Dr. Gary Reagan, on December 24, 2015 (*Id.*). Dr. Reagan recommended a cystoscopy, which is a scope of the bladder through the urethra (*Id.*). Dr. Coe submitted the cystoscopy recommendation to Collegial Review; it was approved on January 5, 2016, and performed on February 9, 2016 (*Id.* at p. 6). The cystoscopy did not reveal any structures, tumors, lesions, or stones that could account for the blood in DeBlasio's urine (*Id.*; Doc. 94-5 at p. 38). Furthermore, although Dr. Reagan found DeBlasio had an enlarged external ring, there was no distinct hernia (*Id.*). Dr. Reagan suggested that DeBlasio only follow up as needed, as routine follow up was not necessary (*Id.*). Dr. Coe saw DeBlasio on February 11, 2016, as follow up after his procedure, and ordered additional Toradol and Motrin (Doc. 94-8 at p. 6). DeBlasio's blood pressure on this date was 150/104 (Doc. 94-4 at p. 55)

On February 23, 2016, DeBlasio returned to Dr. Coe for reexamination at the request of the Warden. DeBlasio complained of pain in his right groin, right pelvis, and right scrotum, where he reported increased swelling (*Id.* at p. 56). Dr. Coe noted mild tenderness in DeBlasio's right testicle and near his appendectomy scar (*Id.*). He also noted that DeBlasio's right internal ring was tender with roughing and a bulge (*Id.*). Dr. Coe

further examined DeBlasio's prostate and rectum, noting no lesions, no external hemorrhoids, no masses, and no stool present (*Id.*). He diagnosed DeBlasio with adhesion pain from his appendectomy, pre-hernia pain, mild and recurrent epididymitis, and a history suggestive of symptom magnification (*Id.* at p. 57). Dr. Coe ordered antibiotics and scheduled a follow up for 10 days (*Id.* at p. 56).

On February 25, 2016, Dr. Coe noted that DeBlasio's blood pressure had been high since October 2015 (*Id.* at p. 58). Dr. Coe ordered that his blood pressure be checked at the next appointment, after the round of antibiotics was over, and to start him on a prescription medication if appropriate (*Id.*). Dr. Coe attested that one's blood pressure can fluctuate, and medication is not immediately required due to high readings (Doc. 94-8 at p. 5). He further attested that blood pressure should be monitored over time and non-medication approaches can be taken to lower high blood pressure (*Id.*).

On March 4, 2016, Dr. Coe examined DeBlasio as a follow up to his February 25 visit. He noted that DeBlasio continued to have pain but did not have a hernia, his testicles were normal and symmetric, and his blood pressure was normal at 118/85 (Doc. 94-4 at p. 59).

On March 23, 2016, DeBlasio reported to the Healthcare Unit for nausea and vomiting (*Id.* at p. 60). His abdominal examination was normal, he showed no signs of guarding, tenderness, or distention, and his blood pressure was normal at 128/82 (*Id.* at pp. 60-61). On April 1, 2016, Dr. Coe saw DeBlasio and examined his abdomen and groin, noting no abnormalities (*Id.* at p. 62). Dr. Coe ordered Pepcid, Tums, Colace, and Fiberlax to treat DeBlasio's abdominal discomfort (*Id.*).

Dr. Coe again saw DeBlasio on April 21, 2016, to address DeBlasio's concern that he had a left side groin hernia (*Id.* at p. 63). Dr. Coe found no left-sided hernia, not even a bulge (*Id.*). Dr. Coe went over DeBlasio's prior x-ray and further educated DeBlasio on his right-side pre-hernia that only slightly bulged when he coughed (*Id.*).

On May 24, 2016, DeBlasio saw Nurse James regarding an H Pylori (stomach bacteria that can cause abdominal discomfort) test that was negative (*Id.* at p. 64; Doc. 94-8 at p. 8). DeBlasio reported that he had abdominal pain that got worse when his stomach was full after eating (*Id.*). James noted that DeBlasio has had multiple tests done for his abdominal complaints with no real findings and determined DeBlasio may have anxiety or possible IBS (*Id.*).

Dr. Coe saw DeBlasio for the last time on July 7, 2016 (*Id.* at p. 68). He noted some tenderness in DeBlasio's abdomen but did not find any new or worsening symptoms from his previous diagnoses (*Id.*). He found that DeBlasio had chronic abdominal pain and ordered that DeBlasio remain on the same medications (*Id.*).

On August 26, 2016, DeBlasio was seen by another medical professional at Lawrence who prescribed him Toprol-XL, which can be used to treat hypertension (Doc. 119-1 at p. 25).[3] Dr. Coe attested that throughout his time at Lawrence, DeBlasio never experienced a cardiac or vascular event associated with high blood pressure (Doc. 94-8 at p. 7). Furthermore, DeBlasio never informed Dr. Coe of any adverse symptoms related to high blood pressure (*Id.*).

---

[3] "Toprol-XL," https://www.drugs.com/toprol.html (last visited Jan. 10, 2020).

Dr. Coe further attested that he has reviewed DeBlasio's imaging reports after his period of care (*Id.* at p. 9). Consistent with Dr. Coe's findings, the numerous subsequent tests and imaging have failed to identify any medical cause of DeBlasio's subjective complaints (*Id.*). On August 26, 2016, an abdominal ultrasound suggested DeBlasio was constipated (Doc. 94-5 at p. 112). An October 21, 2016 abdominal ultrasound was normal (*Id.* at p. 113). A May 9, 2017 kidney ultrasound was normal (*Id.* at p. 115). A May 23, 2017 abdominal ultrasound indicated DeBlasio had chronic constipation (*Id.* at p. 114). A November 4, 2017 colonoscopy revealed no polyps or other diagnosable condition (Doc. 94-6 at p. 48). Finally, a December 20, 2017 chest x-ray revealed no abnormality or active pulmonary disease and showed his bones were intact (Doc. 94-7 at p. 21).

Defendant John Baldwin was the Director of the IDOC at all relevant times (Doc. 113-2 at p. 42). DeBlasio testified that he wrote grievances during his time at Lawrence, as well as a personal letter to Baldwin, explaining the lack of medical treatment he was receiving (*Id.*). There are two documents in the record that bear Baldwin's, or his designee's, signature concerning a concurring opinion of the Administrative Review Board's and facility's decisions (Doc. 113-4; 113-5). Baldwin's, or his designee's, concurring opinions were "based on a total review of all information," and found that DeBlasio's grievances were properly addressed by the institutional administration (*Id.*). DeBlasio admitted he has no evidence that Baldwin did not look into his medical complaints upon receiving his grievances (Doc. 113-2 at p. 46).

Defendant Steven Duncan was the Warden of Lawrence during the relevant time period (*Id.* at p. 43). DeBlasio testified that Warden Duncan was aware of his medical

conditions through both the grievance procedure and a face-to-face meeting in which he asked Warden Duncan to intervene or look into his lack of medical treatment (*Id.*). Yet, DeBlasio testified, Warden Duncan did not look into his issues (*Id.*). Defendant Duncan attested, however, that whenever he reviewed an offender's emergency grievance containing allegations regarding medical treatment, it was his common practice to always inquire with the facility medical professionals to ensure the offender's concerns were known and properly addressed based on their medical expertise (Doc. 113-1). Furthermore, whenever an inmate voiced concerns about medical treatment to Warden Duncan, his common practice was to inform facility medical professionals to ensure the offender's concerns were known and addressed based on their medical expertise (*Id.*). DeBlasio testified he has no evidence to prove that Warden Duncan did not look into his medical issues (Doc. 113-2 at p. 55).

Defendant Lorie Cunningham has been the Healthcare Unit Administrator at Lawrence since December 21, 2015 (Doc. 139-1). According to DeBlasio, Cunningham was informed of his medical concerns through the grievance procedure, written requests, and through conversations with his family members on the telephone (Doc. 113-2 at pp. 55-56). Cunningham testified that, as the the HCUA, when an offender's medical grievance or request is brought to her attention, she reviews the offender's medical charts and confer with on-site Wexford medical personnel to ensure the offender-patient's complaints are known (Doc. 113-6). Similarly, when an offender's family member calls the facility and voices complaints, Cunningham will review the offender's medical charts and ensure the offender is seen by a medical provider, if necessary (*Id.*). DeBlasio

admitted he cannot say whether Cunningham, as matter of fact, looked into his medical concerns (Doc. 113-2 at p. 57). Furthermore, Cunningham attested that only a licensed medical physician may direct treatment to an individual (Doc. 139-1). As a nurse, she cannot direct medical treatment (*Id.*).

All Defendants have moved for summary judgment on the merits of DeBlasio's claims, asserting the evidence shows DeBlasio did not have a serious medical condition and that Defendants were not deliberately indifferent to his medical needs. In response, DeBlasio contends that he had objectively serious medical conditions and that Defendants were deliberately indifferent to his medical needs. Further, DeBlasio contends that Defendant Wexford was deliberately indifferent to his medical needs in that it instituted a longstanding policy or practice at Lawrence of denying and delaying medical care.

### THE REPORT AND RECOMMENDATION

On October 16, 2019, Judge Sison entered the Report and Recommendation currently before the Court (Doc. 147). Judge Sison recommends the undersigned grant summary judgment to Defendants on DeBlasio's deliberate indifference claims because the evidence does not support a finding that he suffered from a serious medical need. Even if he did, Dr. Coe's treatment was not so inappropriate or such a substantial departure from accepted professional judgment, practice, or standards that a jury could find he was deliberately indifferent.

Judge Sison further found that DeBlasio presented no evidence whatsoever of a Wexford policy or practice of denying or delaying medical care to inmates. And a private

corporation such as Wexford cannot be held liable under 42 U.S.C. § 1983 for the actions of its employees under a *respondeat superior* theory of liability. Even if it could, Judge Sison already found that DeBlasio could not establish any deliberate indifference on the part of Wexford's employee, Dr. Coe.

With regard to the IDOC Defendants, John Baldwin, Lorie Cunningham, and Steven Duncan, Judge Sison found that they (or their designees) investigated DeBlasio's medical issues and found they were being properly addressed by medical staff. Moreover, it was reasonable for these Defendants to rely on the advice and treatment rendered by the numerous medical professionals that treated DeBlasio. Based on this evidence, Judge Sison concluded, no reasonable jury could find that the IDOC Defendants turned a blind eye to DeBlasio's medical concerns.

After an extension of time, DeBlasio timely filed an objection to the Report and Recommendation on November 14, 2019 (Doc. 150). Dr. Coe and Wexford filed a response on November 14, 2019, which the IDOC Defendants later joined (Doc. 152).

**LEGAL STANDARDS**

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues specifically objected to, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*,

824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). If only a "partial objection is made, the district judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment is proper only if the moving party can demonstrate "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). S*ee also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). But "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## DISCUSSION

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, a plaintiff must show first that his condition was "objectively, sufficiently serious" and second that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted).

To establish deliberate indifference, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. Whether a prison official acted with the requisite state of mind "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).

In cases where a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for the condition, the Seventh Circuit

has framed the issue "not [as] deliberate indifference to a serious medical need, but as a challenge to a deliberate decision by a doctor to treat a medical need in a particular manner." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal quotation marks omitted)). In those cases, a court should defer to a medical professional's treatment decision "unless no minimally competent professional would have so responded under those circumstances." *Id.*; *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

"Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (internal citation omitted). A health care provider acting in his professional capacity "may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)).

I.  Dr. Coe and Wexford

   A.  Fractured Vertebra

With regard to his alleged fractured vertebrae, DeBlasio objects to the Report and Recommendation and argues that he was allowed to visually examine his September 21, 2015 x-ray and could clearly see a fracture. He claims that, had he been appointed counsel, a medical expert would have been able to diagnose the fracture and counsel could have called Travis James and the x-ray technician to corroborate the fracture.

In response, Defendants note that DeBlasio admitted he was never actually diagnosed with a fracture, and he has presented no evidence that he ever had a fractured vertebra (Doc. 151). Furthermore, all admissible evidence confirms he never had a fracture. And in any event, Dr. Coe was not deliberately indifferent as he assessed DeBlasio for this condition.

The Court agrees with Defendants that DeBlasio has failed to show he had an objectively, sufficiently serious medical condition. While DeBlasio speculates he *may* have had a fracture based on Travis James's reaction to his x-ray, he has presented no admissible evidence of a spinal fracture. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."). And DeBlasio's testimony that James told him he had a problem with his vertebrae is inadmissible hearsay to which DeBlasio has presented no exceptions. *See* FED. R. EVID. 801(c). At most, the evidence in the record indicates he has mild degenerative disease that does not require treatment. Because DeBlasio has not demonstrated he had an objectively serious medical condition, Defendants could not have been deliberately indifferent to it.

To the extent DeBlasio claims he should have been appointed counsel, his motion to recruit counsel was denied without prejudice on February 1, 2018 (Doc. 51). DeBlasio has not raised the issue of counsel since that time, and he certainly cannot raise it for the first time in an objection to the Report and Recommendation. *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) (finding arguments raised for the first time in an objection

are ordinarily waived); *Lowe v. Frank*, 2004 WL 635704, at *3 (W.D. Wis. Mar. 9, 2004) ("Petitioner asserted this claim for the first time in his objections to the magistrate judge's report and recommendation. That was too late."). DeBlasio's objection is overruled.

B.      **Abdominal Pain**

As to his abdominal pain, DeBlasio apparently takes issue with Judge Sison's factual finding that an abdominal ultrasound on October 21, 2016—after Dr. Coe's care had ended—was "normal." He asserts that the ultrasound actually showed mild atheromatous irregularity of the abdominal aorta and an inadequately distended gallbladder (Doc. 94-5 at p. 113).

In response, Defendants argue that the October 21, 2016 abdominal ultrasound is irrelevant because it was performed after Dr. Coe was no longer employed by Wexford. Thus, Dr. Coe could not have been deliberately indifferent to the findings of this ultrasound. And, moreover, the final impression on the ultrasound was indeed that it was normal.

Again, the Court agrees with Defendants. Not only does DeBlasio fail to provide evidence that an irregularity of the abdominal aorta and an inadequately distended gallbladder are serious medical conditions, but his claim that his ultrasound was not "normal" is refuted by the summary judgment evidence. The record, signed by Dr. Daniel Stanton of Central Illinois Radiological Associates, LTD, states "[t]here are no abnormalities within the right lower quadrant or left lower quadrant." Dr. Stanton's impression states: "Normal ultrasound of the abdomen."

Even if the findings of this ultrasound were somehow relevant, DeBlasio has failed

to demonstrate that Defendants were deliberately indifferent to his abdominal pain. Dr. Coe ordered and performed test after test to determine the source of DeBlasio's discomfort. Wexford approved nearly a dozen ultrasounds and x-rays, two specialists' referrals, a cystoscopy, and a colonoscopy. No referral or procedure was denied during the relevant time frame. Based on this evidence, no reasonably jury would find Defendants were deliberately indifferent to DeBlasio's abdominal pain.

### C. Elevated Blood Pressure

DeBlasio also objects to Judge Sison's conclusions with regard to his elevated blood pressure. DeBlasio argues that his medical records reflect he had high blood pressure and that Dr. Coe "blatantly refused to treat" his hypertension. He notes that 15 out of 22 readings were "high" or "extremely high," and further states that it is common knowledge that high blood pressure causes heart disease, risk of stroke, kidney disease, and numerous other health conditions.

Defendants contend that, even if DeBlasio's high blood pressure was an objectively serious medical need, Dr. Coe was not deliberately indifferent when he noted DeBlasio's elevated blood pressure, ordered that it be monitored, and subsequently his blood pressure was not elevated during the relevant period of time.

The Court acknowledges high blood pressure can be an objectively serious medical condition. *See Jackson v. Pollion*, 733 F.3d 786, 789–90 (7th Cir. 2013) ("Hypertension is a serious medical condition because of the long-term damage that it can do."). But DeBlasio has failed to show how he was harmed by Defendants' failure to prescribe him medication sooner. In *Jackson*, the Seventh Circuit stated:

> No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury. For there is no tort—common law, statutory, or constitutional—without an injury, actual or at least probabilistic.

*Id.* That is why, the Court of Appeals noted, in cases where prison officials delayed rather than denied treatment, courts require the plaintiff to offer "verifying medical evidence" that the delay in treatment caused some degree of harm. *Id.*

DeBlasio has not done so here. He has not presented evidence that he suffered any long-term consequences or other harm caused by the delay in treating his sometimes-elevated blood pressure. Even if he had, DeBlasio has not presented evidence that Dr. Coe acted with a sufficiently culpable state of mind, namely, deliberate indifference. Dr. Coe testified that a person's blood pressure can fluctuate over time and medication is not immediately required due to high readings (Doc. 94-8 at p. 5). He further attested that blood pressure should be monitored and non-medication approaches can be taken to lower high blood pressure. Based on this evidence, no reasonable jury could find that Dr. Coe's failure to prescribe blood pressure medication was a substantial departure from accepted professional judgment, practice, or standards. DeBlasio's objection is overruled.

## II. IDOC Defendants

DeBlasio makes no specific objections with regard to the IDOC Defendants; therefore, the Court reviews Judge Sison's conclusions with regard to these Defendants for clear error. After completing this review, the Court agrees with Judge Sison that the IDOC Defendants could not have been deliberately indifferent to DeBlasio's medical

needs. Not only are they entitled to rely on the judgment of medical professionals and had no personal involvement in DeBlasio's medical care, but the evidence shows that these Defendants or their designees investigated DeBlasio's medical issues and found they were being properly addressed. Thus, they were not deliberately indifferent.

### III. Other Objections

DeBlasio further makes general objections to the numerous references to his deposition testimony and the fact that his testimony was cherry-picked and used against him by both Defendants and Judge Sison, who he also claims did not review evidence that was submitted for *in camera* review. But he has not identified any incorrect citations to his deposition, which was properly presented as evidence before the Court, and Judge Sison properly found that the evidence submitted for *in camera* review was not relevant. Accordingly, Judge Sison did not clearly err with regard to these evidentiary matters.

### Conclusion

For these reasons, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Gilbert C. Sison (Doc. 147), **OVERRULES** the objection filed by Plaintiff Brian DeBlasio (Doc. 150), and **GRANTS** the motions for summary judgment filed by Defendants (Docs. 93, 112). Plaintiff Brian DeBlasio shall recover nothing, and the Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED.**

**DATED:** January 13, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**